UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES REILLY,
Plaintiff,
v.

TIM DONNELLON, *et al.*,
Defendants.
_____________________________/

Case No.: 19-11249

Linda V. Parker
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION: SCREENING AMENDED COMPLAINT AND ADDRESSING MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 94, 95)**

Plaintiff filed this prisoner civil rights case on April 30, 2019 without the assistance of counsel. (ECF No. 1). The Court issued an Opinion and Order of Partial Dismissal during June 2019 in which some defendants and claims were dismissed. (ECF No. 7). The Court then granted Plaintiff's request to file an amended complaint, which she did on October 17, 2019.[1] (ECF No. 9, 19). On September 13, 2021, after the close of the discovery period, the St. Clair County Defendants (St. Clair County, St. Clair County Sheriff's Department, Donnellon, Buckley, McConell, Tomion, Heidemann, Dunn, Bohm, Rushing, Gratopp, Adams, Paulus, Bliss, Kelly, and Olejnik) moved for judgment on the pleadings

[1] Plaintiff identifies as a transgender woman and refers to herself using female pronouns. The Court follows suit.

under Fed. R. Civ. P. 12(c) and for summary judgment under Rule 56. (ECF No. 94). The Lake Huron Medical Center ("LHMC") Defendants (LHMC, Spencer, Roberts, Tarrah LNU, Evenson, and Francis) moved for summary judgment. (ECF No. 95). Plaintiff was ordered to respond to the motions and was granted two extensions to do so. (ECF Nos. 96, 100, 106). At any rate, Plaintiff has not filed a response brief to either motion.

This matter was referred to the undersigned for all pretrial proceedings. (ECF No. 55).

For the reasons below, the undersigned recommends that the St. Clair County Defendants be dismissed; that LHMC, Roberts, Evenson, and Francis be dismissed; and that Spencer's and Tarrah LNU's motion for summary judgment be denied without prejudice.

## I. INTRODUCTION

A review of the docket reveals the amended complaint has not been screened under 42 U.S.C. § 1997e and 28 U.S.C. § 1915A. The undersigned will first address St. Clair County Defendants' motion for judgment on the pleadings and screen the amended complaint. Any remaining claims will be addressed under the Rule 56 summary judgment standards. Then, the undersigned will screen the amended complaint as to the LHMC Defendants and will address remaining claims under their motion for summary judgment.

## II. DISCUSSION

### A. Amended Complaint Allegations

Plaintiff alleges she was detained at the St. Clair County Jail beginning on September 29, 2018. She remained there during the events alleged in the amended complaint. Plaintiff is transgender and has spine damage. (ECF No. 19, PageID.84). She claims inadequate medical care, denial of medication, and erroneous charges to her jail account.

Plaintiff began complaining of pain her first day at the jail because her cell was not equipped with a mattress to lay on. She alleges she was at times given Tylenol or Motrin for pain, but was not given a regular dispensation of adequate medication despite sending kites and speaking with medical personnel. At one point, Defendant Spencer told Plaintiff the Motrin prescription was not long-term, and that she would need to obtain any future supply from the commissary, even though it was currently out of stock. (*Id.* at PageID.88).

At the beginning of her time at the jail, Plaintiff was also not given her estrogen medication. Spencer allegedly told Plaintiff she would get medication that is medically necessary. (*Id.* at PageID.91).

Plaintiff further alleges she was denied medically necessary compression socks for edema in her legs. She sent a kite and grievance about this issue. Plaintiff's family mailed socks to her. While Defendant Olejnik conveyed he had

no security issue with Plaintiff obtaining socks from family, Defendant Spencer denied them to Plaintiff. (*Id.* at PageID.91-92).

Plaintiff maintains she was denied a sanitary pad and a properly fitting bra during a portion of her incarceration. She required pads for a genital "leakage" issue. When she arrived at the jail, she was given boxers to wear rather than underwear and a pad. She complained to staff and requested a pad. After three months defendant Evenson ordered pull-up briefs for Plaintiff, but this was "overkill." (*Id.* at PageID.90). The briefs would tear during the night because of Plaintiff's movement. Plaintiff told Spencer she needed a bra sized 46 b or c. Spencer delegated the task to a non-party who obtained a size 48 bra, which was too large. Plaintiff sent a kite requesting a smaller bra; the response was that Plaintiff could not have the correct size sent in. Plaintiff was given a new bra, but this time too small. Her family sent correct size bras, but staff did not forward them to her. (*Id.* at PageID.91).

Sometime during the detention, Plaintiff saw what she believed were incorrect charges to her account for medical care. She sent a kite to the billing department, which responded that she requested the items, so they were properly billed. Plaintiff disputes this. She then sent a kite to Defendant Olejnik about the problem. He responded in person that he could not answer a complaint about billing. Plaintiff then requested a grievance form and submitted a Step I grievance.

She was "disturbed" by the response (not discussed in the amended complaint) and filed an appeal at Step Two. She did not state the Step Two response. (*Id.* at PageID.94).

B. St. Clair County Defendants

1. Screening and Rule 12(c) Standards

Here, Plaintiff has been granted leave to proceed without prepayment of the filing fee. Under the Prison Litigation Reform Act of 1996 ("PLRA"), the Court must sua sponte dismiss an *in forma pauperis* complaint before service if it determines the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B). The governing standards for failure to state a claim under Rule 12(c) or Rule 12(b)(6) are technically the same as the standards for failure to state a claim under 28 U.S.C. §§ 1915(e) or 1915A. *See Hill v. Lappin*, 630 F.3d 468, 470-471 (6th Cir. 2010).

Dismissal is required if complaints are frivolous or malicious, if they fail to state a claim for relief, or if they seek monetary relief from a defendant who is immune from such relief. *Hill v. License*, 2018 WL 1787295 (E.D. Tenn. Apr. 13, 2018). "Such a dismissal may occur at any time, before or after service of process and before or after the defendant's answer." *Runnels v. Charles*, 2020 WL

1897367, at *1 (E.D. Tex. Mar. 18, 2020), *report and recommendation adopted*, 2020 WL 1891717 (E.D. Tex. Apr. 16, 2020) (citing *Green v. McKaskle*, 788 F.2d 1116, 1119 (5th Cir. 1986)); *see also Edge v. Mahlman*, 2021 WL 3725988, at *2 (S.D. Ohio Aug. 23, 2021) (screening complaint after defendants filed Rule 12(c) motion for judgment on the pleadings). A complaint is frivolous if it lacks an arguable basis in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

A complaint must comply with Federal Rule of Civil Procedure 8(a)(2), which requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A plaintiff is also obliged "to provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555 (citations and quotation marks omitted)). In *Ashcroft v. Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." 556 U.S. 662, 677 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. And although the Court must accept all well-pleaded factual allegations in the complaint as true, it need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

The pleadings of *pro se* litigants are held to a less stringent standard than those drafted by attorneys, and as a consequence, should be liberally construed. *See Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). Even still, *pro se* litigants remain subject to the Federal Rules of Civil Procedure. Courts are not expected to devise a claim where the plaintiff has failed to articulate one in her pleadings. *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011).

2. Individual Defendants

In an Opinion and Order dated June 20, 2019, the Court dismissed some defendants and some claims after screening the original complaint. The Court determined Plaintiff failed to meet the minimum pleading requirements as to Defendants Donnellon, Buckley, Roberts, Lake Huron Medical, McConnell, Tomion, Heidemann, Dunn, Bohm, Rushing, Gratopp, Evenson, and Adams because she failed to make sufficient allegations to give these defendants fair

notice of the claims against them. (ECF No. 7, PageID.24-25) (citing *Twombly*, 550 U.S. at 555). Plaintiff named Lake Huron Medical Center, instead of Lake Huron Medical, in the amended complaint. The claims against the LHMC Defendants are addressed below in the next section.

The Court later granted Plaintiff's request to file an amended complaint, which she did on October 17, 2019. (ECF No. 19). The Court warned Plaintiff that she "shall not include individuals or claims in her amended complaint previously dismissed by the Court in its June 20, 2019 opinion and order, unless Plaintiff cures the defects with respect to those defendants/claims which are identified in that decision." (ECF No. 9, PageID.47). Plaintiff named the same defendants as in the original complaint along with several new defendants.

Except for defendants Evenson and Adams, the amended complaint is no different from the original complaint with respect to those previously dismissed defendants. Plaintiff merely listed those defendants' positions, for example that Tim Donnellon is a sheriff, and stated these defendants "are the administrators, policy/rule makers, money handlers, contract negotiators, operation managers, gatekeepers, security forces, overseers, regulators, bosses, supervisors, disciplinary enforces." (ECF No. 19, PageID.81). She also alleged these defendants are responsible for training staff, maintaining an adequate health care system, and are responsible for any rule or legal violations. (*Id.*). There are no allegations of

specific conduct by any of these defendants, only the generic statements just listed. Plaintiff also failed to allege specific acts of wrongdoing for newly added defendants Bliss, Kelly, Paulus, and Francis, only the generic statements.

As discussed in the opinion screening the original complaint, a complaint must give fair notice to the defendant of what the claim is and the grounds on which it rests. *Twombly*, 550 U.S. at 555. To meet this goal, the plaintiff must comply with basic pleading requirements including pleading factual content that allows the reader to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Indeed, to recover against a given defendant for a claimed constitutional violation, the plaintiff "must allege that the defendant [was] personally involved in the alleged deprivation of federal rights." *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (citations omitted). Here, there are no allegations of specific constitutional violations committed by these defendants. The amended complaint does not give notice of the claims against them.

To the extent that these allegations seek to hold the defendants liable as supervisors, as she mentions their roles as bosses or supervisors, the claims should be dismissed because there is no supervisory liability in actions brought under 42 U.S.C. § 1983. "[S]upervisory liability requires some 'active unconstitutional behavior' on the part of the supervisor." *Peatross v. City of Memphis*, 818 F.3d

233, 241 (6th Cir. 2016). "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (emphasis added) (internal quotation marks omitted). The Sixth Circuit has interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Peatross*, 818 F.3d at 242 (quoting *Shehee*, 199 F.3d at 300). Plaintiff's allegations do not show or even suggest any of these defendants implicitly authorized, approved, or knowingly acquiesced in unconstitutional conduct.

For the reasons explained in the Court's June 2019 screening Opinion and Order, and because Plaintiff did not sufficiently plead a supervisory liability claim, these defendants should be dismissed.

Adams was previously dismissed for Plaintiff's failure to state a claim against him. Plaintiff provided additional facts about Adams in the amended complaint that appears to be a deliberate indifference claim. The claim relates to Plaintiff's request for a bra. Plaintiff alleges she spoke to defendant nurse Spencer and complained that her breasts hurt from not taking her estrogen and not having a bra. Spencer then told Plaintiff she talked to defendant Adams who said Plaintiff

could have "whatever the other girls have." (ECF No. 19, PageID.90-91). Spencer delegated the task to a non-party prison employee who gave Plaintiff a bra that was too large. She was unable to order the correct size bra.

It appears Plaintiff was a pretrial detainee during the time of the events alleged. In this context, the Fourteenth Amendment, not the Eighth Amendment, applies. The Eighth and Fourteenth Amendment deliberate indifference standards are largely the same except the subjective component is modified in cases brought by pretrial detainees, as explained in the Sixth Circuit's recent decision, *Brawner v. Scott County, Tennesee*, 14 F.4th 585 (6th Cir. 2021).

To establish a deliberate indifference claim, the plaintiff must allege that she was deprived of the minimal necessities of civilized life and that prison officials were deliberately indifferent to her needs. *Powell v. Washington*, 720 F. App'x 222, 227-28 (6th Cir. 2017) (citation omitted). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). The Eighth Amendment framework for deliberate indifference claims includes an objective and subjective prong. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong requires a showing that the deprivation alleged is "sufficiently serious," such that he is "incarcerated under conditions posing a substantial risk of serious harm." *Id*. And the subjective prong requires the inmate to show that a

prison official "[knew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 837. The subjective component is modified here. According to *Brawner*, a pretrial detainee need only show that a defendant "acted . . . recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596. (citation and internal quotation marks omitted).

The claim fails on the subjective component. The allegation that Adams told Spencer to give Plaintiff what the "other girls" get does not state a deliberate indifference claim. If anything, rather than establish that Adams intentionally or recklessly disregarded a risk to Plaintiff's health or safety, the single allegation tends to show the opposite—Adams approved Plaintiff getting the supplies she needed. That other prison officials allegedly did not comply bears no obvious connection to Adams. Since Plaintiff did not sufficiently plead the subjective element of the Fourteenth Amendment claims, and there is no other discussion of conduct by Adams, he should be dismissed.

Plaintiff also failed to state a claim against newly added defendant Olejnik. According to Plaintiff, Olejnik was a lieutenant at the St. Clair County Sheriff's Department. There are two separate occurrences for which Olejnik is alleged to be involved. The first relates to compression socks. Plaintiff alleges she spoke to Defendant nurse Spencer on March 27, 2019 about her pain and lack of estrogen

medication. Around that time, she was also trying to obtain compression socks for edema in her legs. She submitted a grievance about the denial of the socks. Olejnik allegedly emailed Spencer advising her that "he did not have a <u>security</u> issue with the socks" mailed in from Plaintiff's family. (ECF No. 10, PageID.91) (emphasis in original). Still, Spencer denied the socks.

The second set of allegations relate to allegedly erroneous charges for medical services on her jail account. She forwarded a kite to Olejnik asking for assistance. He approached Plaintiff's cell and told her "he could not answer a complaint against billing." (ECF No. 19, PageID.94). Plaintiff then requested a grievance form and filed a grievance directed at billing. A non-party responded to the grievance. She filed a Step Two appeal. Olejnik responded, but Plaintiff could not share his response in the amended complaint because she needed to obtain it during discovery in this case. She asserts inmates have a due process right to challenge medical services charged to their accounts. (*Id.* at PageID.95).

The first occurrence does not state a constitutional violation. To the extent that the issue with the compression socks is alleged as a deliberate indifference claim, there is no claim against Olejnik. As with Adams, Plaintiff did not allege subjective deliberate indifference. On the contrary, she appears to allege Olejnik approved the socks, but a different defendant denied them; no connection was made between the denial and Olejnik.

As for the second occurrence, it is difficult to glean what Plaintiff alleges Olejnik did wrong. He responded to a Step Two grievance appeal, which does not state a federal violation. Perhaps he denied the appeal. If that is the case and is the basis for naming Olejnik in the amended complaint, such a claim would fail because "[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir .2003); *Lee v. Mich. Parole Bd.,* 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."). As Plaintiff has not attributed unconstitutional conduct to Olejnik, he should be dismissed.

4. ADA and RA Claims

At the end of the amended complaint, Plaintiff asserts the Defendants' actions establish cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments and of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA"). This is the first and only mention of the ADA and RA in the complaint.

Plaintiff did not specify whether the ADA claim is mentioned as a Title I, II, or III ADA claim. Reading the amended complaint liberally, Plaintiff appears to intend a Title II claim. This case cannot be a Title I or Title III case. Title I

prohibits employment discrimination, 42 U.S.C. § 12112(a), and Title III "prohibits discrimination on the basis of disability in public accommodations operated by *private* entities." *Sandison v. Michigan High Sch. Athl. Ass'n, Inc.*, 64 F.3d 1026, 1036 (6th Cir. 1995). This case is not against an employer or prospective employers, nor is a claim raised against a private entity for discrimination in public accommodations.

Title II of the ADA, 42 U.S.C. § 12132, establishes that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." The statute defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities[.]" 42 U.S.C. § 12102(1)(A). The ADA defines a "public entity" broadly to include "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131. The Sixth Circuit and other courts have thus held that sheriff's offices and other local police departments are "public entities" subject to suit under Title II. *See Crumbaker v. McClean County, Ky.*, 37 F. App'x 784, 786 (6th Cir. 2002) (stating that McClean County Sheriff's Office is a "public entity" under Title II); *Gorman v. Bartch*, 152 F.3d 907, 912 (8th Cir. 1998) ("A local police department falls squarely within the statutory definition of 'public entity.'").

Individual defendants sued in their official capacities are also "public entities" under Title II. *See Everson v. Leis*, 556 F.3d 848, 501 n. 7 (6th Cir. 2009).

"To establish a *prima facie* case of intentional discrimination under Title II of the ADA, a plaintiff must show that: (1) she has a disability; (2) she is otherwise qualified to receive the benefit or service at issue; and (3) she was being excluded from participation in, denied the benefits of, or subjected to discrimination . . . because of her disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 357 (6th Cir. 2015). The ADA and RA analyses are essentially the same. *S.B. ex rel M.B. v. Lee*, 2021 WL 4755619, at *11-12 (E.D. Tenn. Oct. 12, 2021) (citing *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008) (stating that "[w]e will . . . analyze [the plaintiff's] ADA and § 504 claims together" because the parties did not raise "the[ ] differences between" them)).

Plaintiff alleges she is disabled because of spine damage. (ECF No. 19, PageID.84). Aside from her spine damage, she made no allegations related to either claim. Plaintiff ostensibly intended to raise her ADA and RA claims as about alleged inadequate medical care at the jail. But "[a] prisoner cannot rely solely on incompetent treatment for medical problems to prevail under the ADA." *Larson v. Michigan Dep't of Corr.*, 2019 WL 1388955, at *2 (E.D. Mich. Feb. 4, 2019) (citing *Wilbon v. Michigan Dept. of Corr.*, 2015 WL 1004707, at *10 (E.D. Mich. Mar. 6, 2015) and *Cannon v. Eleby*, 187 F.3d 634 (6th Cir. 1999) (mere

allegations of inadequate medical care do not raise a viable discrimination claim)). As there is no other basis alleged for an ADA or RA claim, these claims should be dismissed.

4. Official Capacity Claims Against Individual Defendants

Plaintiff sued the individual defendants in their official and individual capacities. The official capacity claims should be dismissed. The Defendants are entitled to Eleventh Amendment immunity from Plaintiff's claims when they are sued in their official capacities. When a plaintiff sues a defendant in his or her official capacity, it "is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiff's claims against defendants in their official capacities, therefore, are claims against the State of Michigan, and "the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Thus, the Eleventh Amendment bars Plaintiff's claims for money damages against Defendants in their official capacities.

5. St. Clair County and St. Clair County Sheriff's Department

a. Screening and Rule 12(c) motion

It is difficult to parse out a claim against the County, specifically, as opposed to claims raised generally against the St. Clair County Defendants, collectively, in the amended complaint. Reading the complaint liberally, it appears Plaintiff is

alleging that the County did not have a policy governing transgender detainees. She stated,

> Even though . . . , Defendant's [sic] have a questionnaire for classification which addresses individuals like Plaintiff . . . asking if she was trans-gender, there's no policy governing it. It's difficult for Plaintiff to assert that Defendant's [sic] have violated a policy when they have not taken the initiative to develop one. Yet, Defendant's [sic] are still required to provide proper/adequate medical care. . . . At no time can any of the Defendant's [sic] claim they were not aware of the deficiencies/violations which exist within their facility. Inmates have died on their watch, had strokes (failed to receive proper medical attention), had seizures, failed to follow outside physicians orders, denied inmates medications, refused to follow-up with dental orders, failed to keep scheduled orthopedic appointments, and the list goes on. Most if not all of the denial is due to the cost of providing proper medical care even though they are collecting charges off of inmates [sic] accounts.

(ECF No. 19, PageID.83).

The statement that the County did not have a policy governing transgender inmates, by itself, does not state a viable claim to relief against the County because she did not allege specific harm flowing from the lack of a policy. "A municipality may be liable under § 1983 for a failure to train its employees or to institute a policy to avoid the alleged harm where the need to act 'is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need.'" *Heyerman v. Cty. of Calhoun*, 680 F.3d 642,

648 (6th Cir. 2012) (quoting *City of Canton v. Harris,* 489 U.S. 378, 390 (1989)). There are two ways to make out such a claim. One is to show that the municipality had "actual knowledge indicating a deficiency with the existing policy or training (or lack thereof), such as where there have been recurring constitutional violations." *Id*. The other way is to show that the need for the policy should have been "plainly obvious to the [municipality's] policymakers, who, nevertheless, are 'deliberately indifferent' to the need. This arises 'in a narrow range of circumstances' where 'a violation of federal rights may be a *highly predictable* consequence of [the municipality's failure to act].'" *Id.* at 649 (emphasis in original) (citations omitted).

It seems Plaintiff sought to show the County's actual knowledge of a deficiency where she states, for example, that "inmates have died on their watch," but the list of issues it is alleged to know about (inmate deaths, seizures, and so on) is unconnected to housing transgender inmates. She did not allege the County had actual knowledge of a deficiency related to the lack of a trans-specific policy. The allegations also do not support the inference that a violation of federal rights is highly predictable because of the lack of a transgender inmate policy. It is impossible to glean what federal right(s) Plaintiff believes were or would be violated without such a policy.

To the extent Plaintiff intended to raise a claim that the County had a policy of providing inadequate medical care, this claim would also fail.

A claim against St. Clair County must satisfy *Monell* as it is a municipality. "A plaintiff who sues a municipality for a constitutional violation under § 1983 must prove that the municipality's policy or custom caused the alleged injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978)). In *Monell*, the Supreme Court held that municipalities are "persons" subject to suit under § 1983. 436 U.S. at 700-01. However, such a claim may be brought only when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id*. at 694.

The Sixth Circuit has instructed that, to satisfy the requirements of *Monell*, a plaintiff "must identify the policy, connect the policy to the [municipality] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept*., 8 F.3d 358, 364 (6th Cir. 1993) (internal citations and quotations omitted). For these reasons, to succeed on a *Monell* claim, a plaintiff must first allege that the municipality itself caused a constitutional tort. *Monell*, 436 U.S. 658 at 691. "A municipality cannot be held liable solely

because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id*. Second, a plaintiff must show that the alleged conduct qualifies as a policy. *Monell* municipal liability may attach where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id*. at 690. *Monell* liability may also attach when a plaintiff alleges "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id*. at 690-91. A plaintiff must claim that "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Third, a plaintiff must show causation. In other words, a plaintiff must connect the policy to the particular injury alleged.

The amended complaint allegations do not establish beyond conclusory, general terms that the County violated a constitutional right or that the alleged deficiencies in medical care constituted a specific policy or custom. Causation is also lacking. She states the County withheld medical care to inmates to save on costs, but did not connect this practice to an alleged injury against her, i.e., that she

was affected by the desire to save healthcare costs. While she alleges various nurse defendants denied a particular medication or particular medical equipment, she did not connect those denials to a County practice, policy, or custom. For these reasons, Plaintiff failed to state a claim against St. Clair County.

Finally, Defendant St. Clair County Sheriff's Department should be dismissed as a separate defendant because suits against a sheriff's department are really suits against the county. *See e.g.*, *Leach v. Shelby Cty.*, 891 F.2d 1241, 1245-46 (6th Cir. 1989) ("[The plaintiff's] suit against the Mayor and the Sheriff of Shelby County in their official capacities is, therefore, essentially and for all purposes, a suit against the County itself."); *Petty v. Cty. of Franklin*, 478 F.3d 341, 349 (6th Cir. 2007) ("To the extent that [the plaintiff's Section 1983] suit is against [the sheriff] in his official capacity, it is nothing more than a suit against Franklin County itself."). So any claims against the Sheriff's Department should be dismissed.

b. Motion for Summary Judgment

In the interest of thoroughness, the undersigned will address the County's motion for summary judgment about the alleged lack of a transgender policy because Plaintiff elaborated on her claim during her deposition.

Although Plaintiff failed to file a timely response brief to either motion for summary judgment, "a district court cannot grant summary judgment in favor of a

movant simply because the adverse party has not responded." *Stough v. Mayville Cmty. Schs.,* 138 F.3d 612, 614 (6th Cir. 1998). As explained by another judge in this District,

> Rule 56 requires a court to determine, even where a motion for summary judgment is unopposed, "that the moving party has established a right to relief as a matter of law and that no genuine issue of material fact exists before the court can award summary judgment." *Sutton v. U.S.,* 922 F.2d 841, *2 n. 1 (Table) (6th Cir. 1991). When confronted with an unopposed Rule 56 motion, a court must "intelligently and carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the riposte for a silent party." *Guarino v. Brookfield Twp. Trs.,* 980 F.2d 399, 407 (6th Cir. 1992). In conducting this review, a court may rely upon the facts presented by the moving party, reject flagrant evidentiary misstatements, and acknowledge the context from which the evidence was adduced. *See id.* at 404–05.

*Anthony v. Owen*, 2011 WL 4406353, at *1 (E.D. Mich. Sept. 22, 2011).

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a motion for summary judgment, the Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

Plaintiff testified that she was strip searched by two male deputies who laughed at her during the search. She asserted it was "degrading and humiliating," and that she should not have been searched by male deputies. (ECF No. 94-2, PageID.589-90). She maintained this deficiency fell on the Sheriff and Under Sheriff because it is their responsibility to train staff and ensure their staff conduct themselves properly. (*Id.* at PageID.590, p. 106). She wanted the County to draft and institute a "gender positive policy so that the next person that comes in like [her] is not criticized or ridiculed or humiliated because staff think they have to laugh at her." (*Id.* at p. 108). She testified that the deputies should have known to stop searching her when they saw she had breasts. (*Id.* at PageID.589, at p. 105).

Even assuming the strip search by male deputies was unlawful, summary judgment should still be awarded in St. Clair County's favor. The claim that Plaintiff was unlawfully strip searched on a single occasion does not establish that the County had actual knowledge of a deficiency in the strip search policy (or lack thereof with respect to transgender inmates). There is no evidence of any recurring violations during the strip search process.

There is also no evidence in the record that the County's policymakers were deliberately indifferent to a "plainly obvious" need to have a transgender policy in place prior to Plaintiff's detention. To show deliberate indifference, Plaintiff "must show prior instances of unconstitutional conduct demonstrating that the

County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Plinton v. Cty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). In the alternative, "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Id.* (quoting *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 409 (1997)). Here, the record lacks instances of prior unconstitutional strip searches of transgender detainees or evidence that St. Clair County failed to train its employees on how to handle strip searches of transgender inmates.

The County argues it had trans-specific policies in place. One policy it points to, "Custody Authorization, Initial Search, Admission Process and Entry/Transgender-Inter-Sex Inmate," states, in pertinent part, that transgender inmates will be strip searched by a deputy believed to be of the same sex. (ECF No. 94-9, PageID.713, § G(2)(a)(i)). But the version of the policy attached to the motion became effective on February 1, 2019, more than four months after the start of Plaintiff's detention. If there was an earlier version effective before February 1, 2019, it was not attached to the brief.

The County also attached its "Implementation of the Prison Rape Elimination Act (PREA)" policy which contains a provision for the supervision of monitoring of transgender detainees. The policy defines transgender inmates as those persons whose gender identity is different from their assigned sex at birth. It states, "Staff members are prohibited from searching or physically examining a transgender . . . inmate for the sole purpose of determining the inmate's genital status." Plaintiff did not testify that she was searched to determine her gender. The PREA policy also provides that, as to transgender inmates, "Officers will be professional, courteous, and respectful during questioning or searches of any inmates/detainees." (ECF No. 94-8, PageID.696). It also states that "[c]ross-gender strip searches . . . will never be conducted" unless the person conducting the search is a member of medical staff. (*Id.* at PageID.695, at ¶ (D)(1)).

Because the jail's trans-specific policy was not in place until February 1, 2019, it does not help the County's argument until that date. The PREA policy, however, was effective throughout Plaintiff's detention. And that policy addressed strip searches by prohibiting cross-gender strip searches. Since the PREA policy expressly recognizes the legitimacy of a transgender inmate's gender identity, the only reasonable conclusion is that the cross-gender strip search rule applies equally to trans- and cis-gender inmates. In other words, it prohibits non-medical staff of

the gender opposite to the transgender inmate's gender from performing the strip search.[2]

If the claims are directed more to the non-party male officers who searched her and laughed at her, "[t]he occasional negligent administration of an otherwise sound policy is not sufficient to impose municipal liability." *Heyerman*, 680 F.3d at 648 (citing *City of Canton v. Harris*, 489 U.S. 378, 390 (1989) ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.")). The evidence does not suggest this instance of male officers searching a female transgender inmate was widespread at the jail or that the violation occurred because of the County's failure to act in some way.

To the extent there is a claim against the County about a policy or practice of providing deficient medical care, as the County argues, even if there was an underlying constitutional violation, the evidence does not establish a *Monell* claim against the County. Plaintiff's testimony about her health care at the jail does not mention a policy, practice, or custom, and does not connect any such policy and

[2] The undersigned recognizes all reasonable inferences must be drawn in the non-movant's favor. The undersigned finds it is not reasonable to infer that the PREA policy allows cross-gender strip searches of transgender inmates.

the claimed deficient health care. Rather, her health care claims are directed at the remaining individual defendants for their personal actions.

If the claims against St. Clair County are not dismissed for failure to state a claim, they should be dismissed by awarding summary judgment to the County.

C. LHMC Defendants

1. Screening of Amended Complaint

The conclusions above regarding the ADA and RA claims and the official capacity claims should apply equally to defendants Roberts, Francis, Evenson, Spencer, and Tarrah LNU.

The amended complaint does not contain any factual development different from the original complaint as to defendant Roberts. Roberts, therefore, should be dismissed for the reasons stated in the Court's Opinion and Order of Partial Dismissal. (ECF No. 7). There is also no factual development about Francis. Only her job title is listed in the Amended complaint. Francis should also be dismissed for failure to state a claim against her.

Evenson was previously dismissed for Plaintiff's failure to state a claim against him.[3] Plaintiff provided additional facts about Evenson in the amended

[3] A suggestion of death was filed on the docket regarding Defendant Derik Evenson on June 16, 2021. (ECF No. 89). There is no indication the suggestion of death was served on Evenson's successor or representative pursuant to Fed R. Civ. P. 25(a)(1) and (3). Thus, the 90-day clock after which the Court may dismiss Evenson has not started. Further, Evenson died before he was served with the complaint. That said, counsel for LHMC defendants filed the motion for summary judgment on his behalf as well as the other LHMC defendants.

complaint related, possibly, to a deliberate indifference claim. The allegation against Evenson relates to her request for underwear and pads. Again, Plaintiff was previously given boxers to wear but she could not use a pad with the boxers. Plaintiff explained to non-party LPN Mona that she needed underwear and pads. Mona "advised" defendant nurse practitioner Evenson of the issue. Evenson "took it upon himself to order Plaintiff pull-up briefs instead of just getting panties and pads." (ECF No. 19, PageId.90). This did not help. "[I]t was overkill for what needed to be done. Plaintiff could not wear 'diapers' because they tore from Plaintiff moving around all night" because of back pain. (*Id.*).

As discussed above, the Eighth and Fourteenth Amendment deliberate indifference standards are largely the same except the subjective component is modified in cases brought by pretrial detainees, as explained in the Sixth Circuit's recent decision, *Brawner v. Scott County, Tennesee*, 14 F.4th 585 (6th Cir. 2021). The claims fail on the subjective component. To satisfy the subjective component, a pretrial detainee need only show that a defendant "acted . . . recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Brawner*, 14 F.4th at 596. (citation and internal quotation marks omitted).

The allegation that Evenson gave Plaintiff more than she needed does not state a deliberate indifference claim. If anything, rather than establish that

Evenson intentionally or recklessly disregarded a risk to Plaintiff's health or safety, the single allegation tends to show the opposite—Evenson provided Plaintiff with briefs to address the "leakage" issue. Evenson acted on Plaintiff's request. Plaintiff's disagreement with the type of underwear/pad she was given does not rise to the level of a constitutional violation. *See Rhinehart v. Scutt*, 895 F.3d 721, 743 (6th Cir. 2018). Since Plaintiff did not sufficiently plead the subjective element of the Fourteenth Amendment claims, and there is no other discussion of conduct by Evenson, he should be dismissed.

LHMC should be dismissed for Plaintiff's failure to state a *Monell* claim against it. A claim against LHMC must satisfy *Monell* as it is considered a municipality. *See Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) (LHMC may be sued because "a private entity that contracts to perform traditional state functions may also be sued pursuant to § 1983."); *Winkler v. Madison Cnty.*, 893 F.3d 877, 904 (6th Cir. 2018) ("Like a municipality, a government contractor cannot be held liable on a *respondeat superior* theory," but rather "for a policy or custom *of that private contractor*."). The standards for *Monell* claims are addressed above with respect to St. Clair County and will not be repeated here.

Plaintiff did not make the required showings for LHMC. Plaintiff alleges LHMC is responsible for its policies or rules, for training and educating its staff, and for following state and federal law. (ECF No. 19, PageID.82). These

allegations do not establish that LHMC caused a constitutional violation. Without this showing Plaintiff could not, and did not, begin to establish LHMC's conduct qualifies as a policy or to show a causal connection between the policy and an injury. For this reason, LHMC should be dismissed.

The remaining LHMC defendants are Spencer and Tarrah.

2. Spencer and Tarrah's Motion for Summary Judgment[4]

Again, Plaintiff did not file a brief in response to the motion for summary judgment. Her failure to do so does not automatically entitle the defendants to summary judgment. The moving parties must still establish "a right to relief as a matter of law and that no genuine issue of material fact exists." *Sutton*, 922 F.2d 841 (Table), 1991 WL 590, at *2 n. 1.

Spencer and Tarrah have not met their burden. Much of the positions they advance are found in their recitation of facts, but unsupported by citations to record evidence or case law. This deficiency makes evaluating the arguments difficult. And the analysis section of the brief omits any mention of defendant Tarrah. (ECF No. 95, PageID.938-40). As it stands, the Court is required to craft specific arguments for each defendant and each claim, connecting facts and law to reach a conclusion. This is the movants' burden, not the Court's.

[4] Plaintiff moved for appointment of counsel stating that she required counsel to negotiate settlement of meritorious claims or to shorten the time trial would take. The undersigned will address this motion after a ruling on this Report and Recommendation.

Because the briefing is insufficient to allow the Court to evaluate the brief without a response from Plaintiff, the undersigned recommends the motion for summary judgment be denied without prejudice or terminated without prejudice, that Spencer and Tarrah be required to file a new, fully developed motion for summary judgment within 21 days of the Order on this Report and Recommendation, and that Plaintiff be allowed sufficient time to file a response.

## III. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that St. Clair County Defendants Defendants Donnellon, Buckley, McConnell, Tomion, Heidemann, Dunn, Bohm, Rushing, Gratopp, Adams, Paulus, Olejnik, Bliss, Kelly, St. Clair County, and St. Clair County Sheriff's Department be **DISMISSED** pursuant to the Court's mandate to screen prisoner civil rights complaints. Alternatively, the undersigned recommends St. Clair County's motion for summary judgment be **GRANTED** and that it be dismissed from this case.

The undersigned further **RECOMMENDS** that LHMC Defendants LHMC, Roberts, Francis, and Evenson be dismissed pursuant to the Court's mandate to screen prisoner civil rights complaints.

The undersigned further **RECOMMENDS** that Spencer and Tarrah LNU's motion for summary judgment be **DENIED WITHOUT PREJUDICE** or

**TERMINATED WITHOUT PREJUDICE**, that they be required to re-file a fully supported motion, and that Plaintiff be allowed time to respond.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: May 9, 2022

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on May 9, 2022, by electronic means and/or ordinary mail.

s/Kristen MacKay
Case Manager
(810) 341-7850